IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOHN BAEMMERT,

                       Plaintiff,

  v.

CREDIT ONE BANK, N.A.,

                       Defendant.

OPINION & ORDER

16-cv-540-jdp

---

Plaintiff John Baemmert received phone calls attempting to collect credit card debt for defendant Credit One Bank, N.A. Baemmert did not have a Credit One credit card, and he repeatedly informed the callers that they reached the wrong person. But the calls continued, and he received more than 60 collection calls over 12 days. Baemmert sued Credit One, claiming violations of the anti-robocall provision of the Telephone Consumer Protection Act of 1991 (TCPA) and invasion of privacy under Wisconsin law.

Both sides move for summary judgment. Dkt. 9 and Dkt. 15. Baemmert has established that some of the calls were made on Credit One's behalf using an Automatic Telephone Dialing System (ATDS). He has also established that the other requirements for a claim under the TCPA are met, specifically that he incurred charges for the incoming calls. But his evidence does not establish that all the calls were made by ATDS. The court will therefore grant summary judgment to Baemmert on his TCPA claim as to liability, leaving the question of damages, which depends on the number of the ATDS calls, for trial.

As for the state-law invasion of privacy claim, in *Keller v. Patterson* the Wisconsin Court of Appeals has held that unwanted phone calls are not a basis for an invasion of privacy claim. 2012 WI App 78, ¶¶ 10-11, 343 Wis. 2d 569. Accordingly, Baemmert's invasion of privacy

claim fails as a matter of law. Because this is a ground not addressed by the parties, the court will, pursuant to Federal Rule of Civil Procedure 56(f), give Baemmert a short deadline to respond to the court's proposed decision to grant summary judgment to Credit One on the invasion of privacy claim.

UNDISPUTED FACTS

The parties' submissions suggest that many facts are in dispute. But for reasons explained in the analysis section, genuine factual disputes are few. The following facts are not genuinely disputed, except where noted.

In January and February 2016, Baemmert received calls from individuals attempting to collect credit card debt for Credit One. Baemmert did not have a Credit One credit card, and Baemmert asked to be removed from the calling list. Baemmert received over 60 such calls within 12 days, as documented by Baemmert's call logs.

Credit One had engaged two vendors, First Contact, LLC, and iEnergizer, to make debt collection calls on its behalf. Both of these vendors called Baemmert without consent. Credit One attempts to dispute that its vendors made calls to Baemmert, but for various reasons its evidence does not raise a genuine dispute that Credit One's vendors called Baemmert.

At least some of the calls were made using an ATDS. Again, Credit One's evidence does not place this fact in genuine dispute. But Baemmert's evidence establishes only that some of the calls used an ATDS. The number of ATDS calls is genuinely disputed.

Sometime in 2015, before the calls at issue were made, Baemmert's cellular service provider, Cellular One, disconnected Baemmert's service for his failure to pay outstanding bills. Dkt. 30 (Baemmert Dep. 37:6-12). So to use his cell phone again, Baemmert downloaded

2

TextMe, a Voice over Internet Protocol (VoIP) application that transmits calls and text messages through the internet. *Id.* at 40:11-14. The TextMe app allowed Baemmert to use his cell phone only when connected by Wi-Fi to the internet. If someone called Baemmert when he had no internet connection, Baemmert's cell phone would not ring, and he could see the log of missed calls on his phone only when he re-established a Wi-Fi connection. *Id.* at 37:1, 53:13-18. Baemmert could, however, use his phone to make 911 calls through the cellular system, even without an internet connection.

TextMe used a credit system in which use of the app's various functions depleted a user's credits. In Baemmert's case, he received a limited number of credits for free when he downloaded the app, and he obtained more credits by purchasing them or by watching advertisements. Baemmert adduces his own declaration to show that TextMe charged him for any telephone call, whether inbound or outbound. Credit One adduces a contrary declaration from a TextMe employee, but that declaration is inadmissible because it was not timely disclosed, so Credit One has not raised a genuine dispute that Baemmert was charged credits for the calls at issue.

## ANALYSIS

The familiar standards govern the parties' summary judgment motions. A district court must grant summary judgment when no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When the parties cross-move for summary judgment, as they do here, the court "look[s] to the burden of proof that each party would bear on an issue of trial" and "require[s] that party to go beyond the pleadings and affirmatively to establish a

genuine issue of material fact." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997). The court's role at summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *D.Z. v. Buell*, 796 F.3d 749, 756 (7th Cir. 2015) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)). The court's only task is to decide "whether, based on the evidence of record, there is any material dispute of fact that requires a trial." *Id*.

Baemmert asserts two claims against Credit One: a claim under the TCPA's anti-robocall provision, 47 U.S.C. § 227(b)(1)(A)(iii), and an invasion of privacy claim under Wisconsin law, Wis. Stat. § 995.50(2)(a). Both sides move for summary judgment on both claims.

## A. TCPA claim

The TCPA prohibits using an ATDS to make a non-emergency call to "any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii). A defendant may raise affirmative defenses, such as consent, but Credit One raises none.

The parties raise four issues as to the TCPA claim: (1) whether Credit One or its vendors called Baemmert; (2) whether Credit One or its vendors used an ATDS; (3) whether the calls were placed to a number assigned to a cellular telephone service; and (4) whether Baemmert incurred charges for the calls.

### 1. Whether Credit One or its vendors called Baemmert using an ATDS

The court will address the first two issues together. Evidence from both sides shows that at least one of Credit One's vendors called Baemmert using an ATDS, so no reasonable jury could find for Credit One on these issues. Although Credit One insists that neither it nor its

4

vendors could find any affirmative record of a call made to Baemmert, Credit One's evidence fails to raise a genuine dispute of fact.

Baemmert adduces his own testimony that he received many calls from debt collectors who attempted to collect debt for Credit One. Dkt. 11, ¶¶ 43-44. Screenshots of the call logs from Baemmert's cell phone show that Baemmert received calls from 10 numbers that Credit One concedes belong to its vendors. Dkt. 11-1, at 1-19; Dkt. 12-3, at 7. Baemmert also points to a certified transcript of an audio recording from February 3, 2016, when he called one of the collectors back using his home number after having received numerous collection calls on his cell phone. The transcript of the audio recording shows that a representative answered Baemmert's call on behalf of Credit One. Dkt. 18-11, at 2:1-2 ("MALE REPRESENTATIVE: Thank you for calling Credit One Bank."), 4:11-13 ("MR. BAEMMERT: What's the name of this company I'm calling? MALE REPRESENTATIVE: You're calling in Credit One Bank.").

Credit One's own evidence shows the representative from the audio recording was an employee of one of Credit One's vendors, First Contact, LLC. Credit One adduces the declaration of Brendan Lee, A Senior Vice President of First Contact, who states that he searched First Contact's database for audio recordings associated with Baemmert's home phone number and found 13 audio recordings. Dkt. 18-7, ¶ 6. Those 13 recordings include the February 3, 2016 recording discussed above; Credit One played the February 3, 2016 recording during Baemmert's deposition and confirmed that the recording was one of the 13 recordings identified in Lee's declaration. Dkt. 30 (Baemmert Dep. 66:24-82:11, 151:8-152:18). So evidence from both sides shows that at least one of Credit One's vendors called Baemmert on Credit One's behalf.

Baemmert has also shown that First Contact used an ATDS to call him. During the February 3, 2016 call, a First Contact representative indicated that First Contact called Baemmert using a "computerized dialing system." Dkt. 18-11, at 17:21-24. The representative also indicated that Baemmert's number was stored in the system. *Id*. at 20:13-15. This shows that the debt collectors used an ATDS, which is an equipment that "makes calls from a stored list without human intervention." *Sterk v. Path, Inc.*, 46 F. Supp. 3d 813, 819 (N.D. Ill. 2014). So Baemmert has established that First Contact called him using an ATDS on behalf of Credit One. No reasonable jury could find for Credit One on these issues.

Credit One insists that neither it nor its vendors could locate any record of calling Baemmert. Credit One adduces the following: (1) a declaration of Ryan Hunt, a manager at Credit One, Dkt. 20; (2) its own responses to Baemmert's interrogatories, sworn to by Gary Harwood, a vice president of Portfolio Services at Credit One, Dkt. 12-3; (3) a declaration of Duke Christopher, a vice president of operations at iEnergizer, Holdings, Ltd., one of Credit One's vendors, Dkt. 18-6; and (4) the declaration of Brendan Lee of First Contact, Dkt. 18-7, which is discussed above. But none of this evidence establishes that Credit One's vendors did not call Baemmert.

Hunt states that he searched Credit One's records but found no record of Credit One calling Baemmert directly. Dkt. 20. Hunt's declaration does not address Credit One's vendors, so it does not raise a genuine dispute of fact whether First Contact or iEngergizer called Baemmert using an ATDS.

As for the interrogatory answers prepared by Harwood, one of them says, "Defendant has been advised by its vendors that there is no record of calling [Baemmert's number] in 2016 on behalf of Credit One." Dkt. 12-3, at 3. This statement is inadmissible hearsay. A party can

rely on its own sworn interrogatory response, but the normal rules of evidence apply. *See Duff v. Lobdell-Emery Mfg. Co.*, 926 F. Supp. 799, 802 (N.D. Ind. 1996); *James W. Moore*, 11-56 Moore's Federal Practice § 56.93 (3d ed. 2016) ("If the answers are submitted by the asking party, they may be admissible as an admission of a party opponent. If they are submitted by the answering party, there must be some other basis for admissibility."). What Credit One's vendors told Harwood is inadmissible hearsay.

Another Credit One interrogatory response says, "Defendant has no record of hiring any vendor to dial [Baemmert's number]." Dkt. 12-3, at 3. This one, too, is inadmissible. The statement is conclusory. *See Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." (quoting *Gabrielle M. v. Park Forest–Chi. Heights, Ill. Sch. Dist.* 163, 315 F.3d 817, 822 (7th Cir.2003))). And Credit One fails to lay proper foundation, *see Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 726 (7th Cir. 2004) (no abuse of discretion for striking an affidavit for lack of foundation). Harwood, who signed the interrogatory responses, does not explain how he knows that Credit One did not hire any vendor to dial Baemmert's number. And, of course, it's not surprising that Credit One did not hire anyone to call Baemmert's number. He never had a Credit One card, so he was apparently called in error by the vendors.

The declarations from Christopher and Lee have similar problems. Christopher's declaration says, "iEnergizer has searched for Plaintiff's cellular phone number in its call history database and Plaintiff's number does not appear in the database." Dkt. 18-6, ¶ 10. Lee's declaration says, "I had a search performed for the Plaintiff's telephone number . . . in First

Contact's call records and determined that First Contact does not have any record of making calls to the telephone number . . . ." Dkt. 18-7, ¶ 5. These statements, too, are conclusory and fail to establish that the declarant has a foundation of personal knowledge. *See Bordelon*, 811 F.3d at 989; *Lucas*, 367 F.3d at 726. Christopher's declaration also states that iEnergizer asked its vendor to search for Baemmert's phone number, and according to Christopher, the vendor reported that Baemmert's "number could not be found in its records." Dkt. 18-6, ¶ 10. What iEnergizer's vendor reported is again inadmissible hearsay. Without a full explanation of the vendors' record-keeping systems and a demonstrated diligent search of those records, this evidence does not raise a genuine dispute of fact, particularly because Baemmert has documentary evidence that he did receive the calls.

Credit One contends that Baemmert did not allege agency theory or vicarious liability in the complaint so the court should disregard Baemmert's theory that Credit One's vendors called Baemmert. But plaintiffs need not "plead specific legal theories" in their complaints. *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 783 (7th Cir. 2015). And "[c]alls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call." *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559, 565 (2007). So Baemmert's failure to plead an agency theory or vicarious liability in his complaint is no basis for summary judgment.

Whether First Contact called Baemmert on behalf of Credit One and whether First Contact did so using an ATDS are not genuinely disputed.

2. **A number assigned to a cellular telephone service**

It is not enough for Baemmert to show that he received unconsented ATDS calls. Under the TCPA, he must also show either (a) that the call was made to a number "assigned to a . . .

cellular telephone service," or (b) that he incurred a charge for the call. 47 U.S.C. § 227(b)(1)(A)(iii); *see Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1009 (N.D. Ill. 2010). He does not have to show both.

The underlying facts are not disputed, and the court concludes that Baemmert's number was not assigned to a cellular telephone service. Baemmert testified that the phone number he used was a number assigned to his TextMe account when he downloaded the app on his smartphone. Dkt. 30 (Baemmert Dep. 36:16-18). When he downloaded the app and when he received the collection calls, his smartphone had no cellular service because Cellular One had disconnected his service for his failure to pay outstanding bills. *See id*. at 40:11-14 ("[Q] So was Cellular One cutting off service the reason why you then went to the TextMe app so you could have functionality of the phone? A Yes."). Baemmert could make 911 calls, but by rule cellular service providers must relay all 911 calls—even from phones with no cellular service—to emergency dispatchers. *See* 47 C.F.R. § 20.18. So Baemmert's ability to make 911 calls does not show that he had cellular service. Baemmert's smartphone was a device *capable of* receiving cellular service, but the calls were not made to a number assigned to a cellular service.

Baemmert contends that TextMe itself is a cellular telephone service in a notice of supplemental authority. Dkt. 39, at 1-2. The supplemental authority is not new: it is a footnote in a 2015 FCC order. Because Baemmert could have raised this argument in his summary judgment briefs but failed to do so, the argument is waived. Besides, Baemmert's authority is dubious: the footnote has nothing to do with VoIP. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7988 n.174 (2015). Indeed, no court, as far as this court is aware, has held that a VoIP service constitutes a cellular telephone service, and Baemmert cites no authority other than the FCC footnote. Baemmert adduces no evidence

that TextMe actually uses any cellular technology. The court concludes that the calls at issue were not made to a number assigned to a cellular service.

### 3. Charges for the collection calls

As an alternative, Baemmert contends that the service he received from TextMe was a "service for which the called party is charged for the call" under 47 U.S.C. § 227(b)(1)(A)(iii). The Seventh Circuit has not decided whether this call-charged provision applies to VoIP apps, and the text of the TCPA (enacted in 1991 before the development of VoIP technology) does not address the issue. But several courts outside the Seventh Circuit have weighed in, concluding that the call-charged provision applies to VoIP apps. "Except where there is no evidence that the called party was charged for the call, courts generally" recognize that, when a plaintiff pays for services on a per-call basis, like paying for minutes on a cell phone, the plaintiff has a viable claim under 47 U.S.C. § 227(b)(1)(A)(iii). *See Jones v. Experian Info. Sols.*, No. 14-cv-10218, 2016 WL 3945094, at *7 (D. Mass. July 19, 2016) (collecting cases).[1] This court agrees. If a VoIP service charges on a per-call basis, that service falls under the broad statutory language, "any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii). So Baemmert can prevail by showing that he incurred charges for the collection calls.

---

[1] *Accord Klein v. Commerce Energy, Inc.*, No. 14-cv-1050, 2017 WL 2672290, at *12 (W.D. Pa. June 21, 2017) ("The court does not disagree that a call charge on the 'front end' might qualify for purposes of the charged call provision under the TCPA."). One court has held that when a VoIP app requires a flat, monthly fee without incurring charges for each call, that VoIP service is not "service for which the called party is charged for the call." *Karle v. Sw. Credit Sys.*, No. 14-cv-30058, 2015 WL 5025449, at *6 (D. Mass. June 22, 2015). But that case is inapplicable here because TextMe did not charge a flat fee; the account holders used their credits on a per-use basis.

The court is not persuaded by Baemmert's argument that any unwanted call imposes a cost. Baemmert argues that "[e]very call uses some of the phone owner's time and mental energy, both of which are precious," quoting *Patriotic Veterans, Inc. v. Zoeller*, 845 F.3d 303, 305-06 (7th Cir. 2017). Dkt. 13, at 7. The question in *Patriotic Veterans* was whether Indiana's anti-robocall statute, Ind. Code § 24–5–14–5, violated the First Amendment to the Constitution. The case had nothing to do with the TCPA. Baemmert's argument, if adopted, would essentially read the requirements of § 227(b)(1)(A)(iii) out of the TCPA.

But the court is persuaded by Baemmert's argument based on the actual operation of the TextMe app, because he adduces evidence that he actually incurred charges for the collection calls. Baemmert testified during his deposition that TextMe gave him only a limited amount of credits when he downloaded the app and that he had to pay money to get more credits. Dkt. 30 (Baemmert Dep. 43:8-25, 154:4-5, 160:11-161:22). He testified that he had to pay for the credits he spent on the phone calls he received from Credit One's vendors. *Id*. at 161:19-22 ("Q And did you have to use any of those paid credits to make or receive the phone calls that you had with Credit One? A Yes."). He also testified that he incurred charges for inbound calls in 2015 and 2016. *Id*. at 150:8-23, 170:1-4; *see also* Dkt. 11, ¶ 68. So Baemmert has presented admissible evidence to show that he incurred charges for the collection calls made for Credit One.

Credit One tries to dispute this fact, but its evidence does not raise a genuine dispute. Credit One points to an FCC order where the FCC noted that TextMe "users may also receive calls from any telephone number and place calls within the United States without charge." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 2015 WL 4387780, ¶ 36 (2015). Credit One does not explain how facts recited in an FCC order

would be admissible in this case. They are not: "[A] court may not take judicial notice of proceedings or records in another case so as to supply, without formal introduction of evidence, facts essential to support a contention in a case then before it." *Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, No. 12-cv-3233, 2017 WL 1093163, at *3 (N.D. Ill. Mar. 23, 2017) (citations omitted). And the FCC order is dated July 10, 2015, so it does not establish that the calls Baemmert received in January and February 2016 incurred no charge. *See Happel v. Wal-Mart Stores, Inc.*, No. 02-cv-7771, 2007 WL 495277, at *3 (N.D. Ill. Feb. 9, 2007), *aff'd in part sub nom.*, 602 F.3d 820 (7th Cir. 2010) (denying motion to take judicial notice of past financial information noted in a FCC order because past information is irrelevant).

Credit One also adduces the declaration of Amy Hernandez, the CFO of TextMe, who states that TextMe did not charge for inbound calls in 2015 and 2016. Dkt. 19, ¶¶ 3, 6. Hernandez's declaration would raise a genuine dispute, but Credit One disclosed it too late. Credit One did not disclose Hernandez as a witness in its initial Rule 26 disclosures, and it did not update those disclosures. Credit One presented her declaration for the first time *after* Baemmert moved for summary judgment. *See* Dkt. 19 and Dkt. 30 (Baemmert Dep. 172:19-173:2). So Credit One's disclosure of Hernandez's declaration was untimely under Rules 26(a)(1)(A)(i) and (e)(1)(A). Under Rule 37(c)(1), the sanction of exclusion for violating Rule 26 is "automatic and mandatory . . . unless [the] non-disclosure was justified or harmless." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004). Credit One has no explanation for the untimely disclosure of the Hernandez declaration, and it is certainly not harmless because the untimely disclosure deprived Baemmert of the opportunity to impeach this evidence before summary judgment. The court will not consider the Hernandez declaration

at summary judgment. Credit One thus has no admissible evidence to raise a genuine dispute that Baemmert incurred charges for the calls made on behalf of Credit One.

In sum, Baemmert has established the facts necessary to establish Credit One's liability under the TCPA.

### 4. Damages for TCPA claim

Baemmert also moves for summary judgment on the issue of damages for his TCPA claim.

Under the TCPA, a plaintiff may recover either his actual monetary loss or $500 for each violation, whichever is greater. 47 U.S.C. § 227(b)(3)(B). If the court finds that the defendant's violation was willful or knowing, "the court may, in its discretion, increase the amount of the award to an amount equal to [but] not more than 3 times" the amount. § 227(b)(3). Baemmert does not contend that he suffered any actual damages; he pursues the statutory amount of $500 for each call. He also contends that Credit One willfully and knowingly violated the TCPA, making the proposed total $1,500 per call.

The number of calls that violated the TCPA will be determined at trial. Baemmert contends that he received at least 63 collection calls on behalf of Credit One. Baemmert adduces screenshots from his cell phone showing his call log, and that call log shows calls Baemmert received from 12 different numbers. Dkt. 11-1, at 1-19. Credit One concedes in an interrogatory answer that, out of those 12 numbers, nine belonged to First Contact and one belonged to iEnergizer. Dkt. 12-3, at 7. Baemmert does not contend that the other two numbers are associated with Credit One or its vendors, so Baemmert's claims are limited to collection calls that came from these 10 numbers. First Contact's nine numbers account for 61

calls shown on the call log; iEnergizer's number accounts for 3 calls. Dkt. 11-1. So the total number of unconsented collection calls is 64.

But Baemmert has not shown that Credit One's vendors used an ATDS for all 64 calls. Baemmert's affidavit says, "Upon answering *some* of Defendant's calls, I would say 'hello' and there would be a noticeable period of dead air with no live person on the other end of the call." Dkt. 11, ¶ 58 (emphasis added). The transcript of the February 3, 2016 audio recording, which shows Baemmert's conversation with First Contact, says, "MR. BAEMMERT: Why are you calling from different area codes too? Explain that. FEMALE REPRESENTATIVE: That's a computerized dialing system." Dkt. Dkt. 18-11, at 17:21-24. And a First Contact representative indicated that Baemmert's number was stored in the system. *Id.* at 20:13-15. These materials can show that First Contact placed at least some calls using an ATDS, but it falls short of establishing that First Contact used an ATDS for every one of the collection calls. As for the three collection from iEnergizer, Baemmert has not established that any call placed by iEnergizer was through an ATDS.

Baemmert contends that Credit One and its vendors have used ATDSs to make collection calls in the past. He points to a deposition transcript from another case involving Credit One, Dkt. 33, ¶ 15, where Harwood, a vice president of Portfolio Services at Credit One, testified that Credit One had employed vendors who used ATDSs to collect debt. Baemmert also points to another court's opinion noting that Credit One requires its customers to sign an agreement allowing Credit One and its vendors to use ATDSs for collection calls. *A.D. v. Credit One Bank, N.A.*, No. 14-cv-10106, 2016 WL 4417077, at *1 (N.D. Ill. Aug. 19, 2016). The Harwood deposition is admissible, but the court will not take judicial notice of the facts in the district court opinion. In any case, this evidence shows only that Credit One

14

employs vendors who use ATDSs. It does not establish beyond dispute that Credit One's vendors used an ATDS every time they called Baemmert.

Credit One does not respond to Baemmert's argument that Credit One's violations of the TCPA were willful and knowing. The court will deem the point to have been conceded. Credit One was aware of its obligations under the TCPA, as it has been sued over a dozen times in the past for TCPA violations. The initial calls might have been made in error, but Baemmert repeatedly informed the collectors to stop calling, and yet the calls continued. Because the violations were willful and knowing, the court has the discretion to increase the damages up to $1,500 per call. The court will exercise its discretion and set a damages amount after trial.

In sum, Baemmert is not entitled to summary judgment on the amount of damages for his TCPA claim. The number of calls that violated the TCPA will be determined at trial. The violations were willful and knowing. The court will determine whether to enhance damages, and how much, after trial.

## B. Invasion of privacy claim

The parties also move for summary judgment on Baemmert's invasion of privacy claim. Wisconsin law prohibits "[i]ntrusion upon the privacy of another of a nature highly offensive to a reasonable person, in a place that a reasonable person would consider private or in a manner which is actionable for trespass." Wis. Stat. § 995.50(2)(a). The parties dispute whether the collection calls were "highly offensive to a reasonable person" and whether Baemmert received collection calls at a private place.

Neither side raises this issue, but a threshold question here is whether unwanted phone calls would constitute an invasion of privacy under § 995.50. The Wisconsin Court of Appeals has rejected an invasion of privacy claim based on phone calls. In *Keller v. Patterson*, a neighbor

employs vendors who use ATDSs. It does not establish beyond dispute that Credit One's vendors used an ATDS every time they called Baemmert.

Credit One does not respond to Baemmert's argument that Credit One's violations of the TCPA were willful and knowing. The court will deem the point to have been conceded. Credit One was aware of its obligations under the TCPA, as it has been sued over a dozen times in the past for TCPA violations. The initial calls might have been made in error, but Baemmert repeatedly informed the collectors to stop calling, and yet the calls continued. Because the violations were willful and knowing, the court has the discretion to increase the damages up to $1,500 per call. The court will exercise its discretion and set a damages amount after trial.

In sum, Baemmert is not entitled to summary judgment on the amount of damages for his TCPA claim. The number of calls that violated the TCPA will be determined at trial. The violations were willful and knowing. The court will determine whether to enhance damages, and how much, after trial.

## B. Invasion of privacy claim

The parties also move for summary judgment on Baemmert's invasion of privacy claim. Wisconsin law prohibits "[i]ntrusion upon the privacy of another of a nature highly offensive to a reasonable person, in a place that a reasonable person would consider private or in a manner which is actionable for trespass." Wis. Stat. § 995.50(2)(a). The parties dispute whether the collection calls were "highly offensive to a reasonable person" and whether Baemmert received collection calls at a private place.

Neither side raises this issue, but a threshold question here is whether unwanted phone calls would constitute an invasion of privacy under § 995.50. The Wisconsin Court of Appeals has rejected an invasion of privacy claim based on phone calls. In *Keller v. Patterson*, a neighbor

of a sex offender had distributed flyers about the sex offender, which in turn prompted other individuals to call the sex offender's home. 2012 WI App 78, ¶ 10, 343 Wis. 2d 569. When the sex offender's brother and parents sued the neighbor, the Court of Appeals rejected their invasion of privacy claim. The court explained, "The Kellers argue that the hang-up calls, letters, and cars honking their horns in front of their house amounted to an invasion of their home. We disagree. There was no physical intrusion of the Kellers' home by Patterson or even at Patterson's direction." *Id*. The court also rejected plaintiffs' argument that phone calls were recognized as an invasion of privacy under the Restatement of Torts. *Id*.; *see also* Restatement (Second) of Torts § 652B cmt. b (1977). The bottom line is that the Wisconsin Court of Appeals has held that unwanted phone calls do not constitute an invasion of privacy under Wisconsin's statute.

Baemmert relies exclusively on federal cases, and at least one federal court within this Circuit apparently assumed that unwanted phone calls could support an invasion of privacy claim. But no federal court has squarely decided the question. The court is not aware of any decision by a Wisconsin court contrary to *Keller's* holding that unwanted phone calls do not support a claim under § 995.50. A federal court cannot disagree with a state court on an issue of state law. *Barger v. State of Ind.*, 991 F.2d 394, 396 (7th Cir. 1993) ("State courts are the final arbiters of state law."); *Foxworthy v. Buetow*, 492 F. Supp. 2d 974, 987 (S.D. Ind. 2007) ("When considering pendent state claims, the Court is bound by the law as described by the state courts."). Whether unwanted phone calls could constitute an invasion of privacy is not an issue raised by Credit One. (Credit One argued that phone calls placed to a TextMe number do not make out an invasion of privacy claim because TextMe is not a private place, but that is a different question.)

When a court contemplates granting summary judgment on an issue not raised by the parties, the court should give the adverse party notice and reasonable opportunity to respond under Rule 56(f). *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 603 (7th Cir. 2015); *Lynch v. Ne. Reg'l Commuter R.R. Corp.*, 700 F.3d 906, 910-11 (7th Cir. 2012). The issue here is purely legal question; it does not require any factual development. Accordingly, the court will give Baemmert one week to address the issue whether Wisconsin law would recognize an invasion of privacy claim based on unwanted phone calls.

CONCLUSION

The court will grant summary judgment to Baemmert that Credit One has willfully and knowingly violated the TCPA. The number of calls that violate the TCPA will be determined at trial. And after trial, the court will exercise its discretion to determine enhanced damages, if any.

Baemmert has one week to explain why the court should not grant summary judgment on his invasion of privacy claim.

ORDER

IT IS ORDERED that:

1. Plaintiff John Baemmert's motion for summary judgment, Dkt. 9, is GRANTED in part and DENIED in part.

2. The court's decision on defendant Credit One Bank, N.A.'s motion for summary judgment, Dkt. 15, is DEFERRED.

3. Plaintiff must explain by one week from the date of this order why the court should not grant summary judgment in favor of defendant under Federal Rule of Civil Procedure 56(f).

Entered September 25, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge